## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOYCE SANDLIN,                                    Case No. 1:11-cv-458

        Plaintiff,                             Beckwith, J.
                                                  Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Joyce Sandlin filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In May 2007, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of May 1, 2007 due to both physical and mental impairments.  (Tr. 59-60).  Plaintiff was born in 1966 and was 40 years old at the time she filed her SSI application. (Tr. 23).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  On November 2, 2009, an evidentiary hearing was held, at which Plaintiff was represented by counsel.  (Tr. 336-365).  At the hearing, Administrative Law Judge ("ALJ")

Carol K. Bowen heard testimony from Plaintiff, from Plaintiff's niece, and from an impartial vocational expert.  At the end of that hearing, ALJ Bowen referred Plaintiff for a consultative examination, in order to have IQ testing administered to determine whether Plaintiff would meet or equal Listing 12.05, as advocated by Plaintiff's attorney.  (Tr. 363-364).  Following that examination, the ALJ convened a second hearing, at which Plaintiff again appeared represented by counsel.  At the second hearing on March 9, 2010, the ALJ heard additional testimony from Plaintiff and a vocational expert, as well as from a medical expert.   (Tr. 366-385).  Ten days later, the ALJ denied Plaintiff's SSI application in a written decision. (Tr. 12-25).

        The ALJ found that Plaintiff completed school through the ninth grade and has no past relevant work experience since her application date.  (Tr. 17).  The ALJ additionally found that Plaintiff had the following severe impairments: "peripheral vascular disease with a history of osteomyelitis and amputation of the left third toe, sinus tachycardia, borderline intellectual functioning, depression, and anxiety." (*Id.*).  However, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work, as follows:

> she must be allowed to alternate sitting and standing positions as needed during a workday.  She is also restricted to the occasional climbing of ramps or stairs, and she is totally precluded from any climbing of ladders, ropes, or scaffolds.   Furthermore, she must avoid exposure to extreme cold, hazardous machinery, and unprotected heights.  She is further limited to simple and repetitive one-or two-step tasks with work that does not require a production-rate pace or strict reduction [sic] quotas, no more than occasional changes in the work-setting, and no hazardous conditions.  The claimant cannot perform any work that requires public interaction and she is additionally limited to occasional interaction with coworkers and supervisors.

(Tr. 20).  Based upon testimony from the vocational expert, and given Plaintiff's age, limited

education, lack of work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 24). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 25).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff limits argument to the single claim that the ALJ erred by failing to find that Plaintiff's cognitive impairment met or equaled Listing 12.05B. Although the record reflects and the ALJ found additional severe physical impairments, Plaintiff has waived any issues relating to the ALJ's findings that her only "severe" physical impairments are "peripheral vascular disease with a history of osteomyelitis and amputation of the left third toe, [and] sinus tachycardia." *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)(limiting consideration to particular points that Plaintiff presents on appeal). In addition, Plaintiff does not challenge the ALJ's findings concerning two of her mental impairments - specifically, her severe impairments of depression and anxiety.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform

his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

The focus of Plaintiff's appeal to this Court is on Step 3 of the ALJ's analysis; specifically, her conclusion that Plaintiff does not meet or equal Listing 12.05B, concerning moderate mental retardation.  Although the case presented is close, I recommend that the ALJ's decision be affirmed because the decision is within the "zone of choice" afforded the Commissioner, and is supported by substantial evidence in the record as a whole.

**B.  Substantial Evidence Analysis**

**1.  Listing 12.05B**

Plaintiff seeks reversal and an award of benefits under 12.05B.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05B.  That particular listing states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports on onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ....B.  A valid verbal, performance, or full scale IQ of 59 or less....

*Id.*[1]  Plaintiff strenuously asserts that she meets or equals this Listing on the basis of her

---

[1] Listing 12.05B is the listing category for those individuals with the lowest IQ test scores, who are most often classified within the "moderate," "severe," or "profound" categories of mental retardation.  Plaintiff's score of 44 would place her within the "moderate" category.  By contrast, subparagraphs C and D both focus on the generally higher-functioning category of "mild" mental retardation.  Listing 12.05C, for example, requires a valid IQ score of "60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  There is no question that the ALJ found that Plaintiff suffers from physical limitations that cause additional work limitations in this case, but Plaintiff does not contend in this appeal that she meets or equals Listing 12.05C.

IQ score of 44, claiming that additional evidence supports a finding that she has deficits in adaptive functioning.

Relevant records concerning this issue include five separate written reports from mental health professionals, plus testimony from a medical expert at the second hearing. The first four of these psychological reports lack any IQ testing and instead focus on the severity of mental impairments on which no challenge is presented in this appeal; namely, Plaintiff's depression and anxiety. Only the fifth report contains IQ testing and greater focus on Plaintiff's cognitive abilities. Despite the lack of IQ testing in the earlier reports, each contains some relevant information concerning Plaintiff's level of cognitive functioning.

Plaintiff was first referred for a consultative examination before James J. Rosenthal, Psy.D. on September 19, 2007. Dr. Rosenthal noted Plaintiff's reports of anxiety and depression, as well as the fact that Plaintiff appeared to be in pain throughout the interview. (Tr. 176-178). He administered a basic cognitive test, but did not administer an IQ test. On the basic cognitive test, Plaintiff could not perform Serial 3 tasks, and had difficulty answering basic questions. (Tr. 178). On the other hand, Dr. Rosenthal noted that "[h]er thought content was appropriate and expressed in a logical and relevant manner," but that her "effort and persistent [sic] on tests was minimal" and that she "gave up easily." (Tr. 177). Despite Plaintiff's failure "to attempt to complete" basic math problems, Dr. Rosenthal opined that Plaintiff's cognitive abilities would be sufficient for her to manage any award of funds made to her. (Tr. 180).

On November 7, 2007, a second state reviewing physician, Bruce Goldsmith, Ph.D., reviewed the record for consideration of Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Dr. Goldsmith opined that Plaintiff had an adjustment disorder

with anxiety, but found only mild degrees of limitation in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (Tr. 181, 191).

On March 11, 2008, David Chiappone, Ph.D., performed a consultative examination and confirmed a diagnosis of depression.  (Tr. 231).  Dr. Chiappone's report concludes that Plaintiff had a slow work pace, recalled 3 of 3 objects with interference but 0 of 3 objects with a 5-minute delay, was slow in attempting a serial 3 addition task, and had a fund of knowledge in the borderline range.  (Tr. 232-233).  Although Dr. Chiappone did not administer an IQ test, based upon his clinical interview he diagnosed borderline intellect and depression.  He opined that Plaintiff was mildly impaired in her ability to remember simple instructions, and that her memory would be affected over time by both her intellect and her depression.  (*Id*.).  He also found mild impairments in Plaintiff's concentration and attention, ability to relate to co-workers, supervisors and the public.  (*Id*.).

On April 3, 2008, non-examining consultant Douglas Pawlarcyzk, Ph.D., concurred with the diagnoses of borderline intellectual functioning and depression (Tr. 243-244). Dr. Pawlarcyzk opined that Plaintiff's impairments would moderately limit her ability to maintain concentration, persistence or pace.  (Tr. 250).  He also found moderate limitations in her abilities to understand and remember detailed instructions, to complete a normal work-day and work-week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 254-255).

At the request of Plaintiff's attorney, the ALJ referred Plaintiff for formal IQ testing after the first evidentiary hearing, in order to determine whether Plaintiff would meet or equal any portion of Listing 12.05 for mental retardation (paragraphs A through D).  On

7

December 3, 2009, Paul Deardorff, Ph.D. examined Plaintiff.  During the examination, Plaintiff appeared to be unkempt, anxious and depressed.  Dr. Deardorff described Plaintiff as "marginally cooperative" and "not well motivated as she displayed little task persistence." (Tr. 326).  Plaintiff's attention and concentration were not strong, she could not calculate serial sevens, and she had difficulty with very simple addition problems.  (Tr. 327).  Dr. Deardorff administered the Wechsler Adult Intelligence Scale- Fourth Edition (WAIS-IV) test, and determined that Plaintiff had a verbal comprehension score of 56, scores of 50 on perceptual reasoning, working memory and processing speed, and a full scale IQ of 44. Plaintiff's IQ scores standing alone would have placed her in the "moderately mentally retarded" range, reflecting functioning that is less than the first percentile for Plaintiff's age group (Tr. 328).  Her scores were consistent, to the extent that scatter in subtest scores was within acceptable limits, and all test data indicated that Plaintiff functions moderately to well below average in all areas.  (Tr. 328).

Notwithstanding the internal consistency of the IQ scores, Dr. Deardorff opined that those scores were inconsistent with Plaintiff's clinical presentation, which he described as indicative of "borderline to low average intelligence." (Tr. 326).  He concluded that "emotional and motivational factors very likely interfered with her performance on this [IQ] measure ... as she appears to be of borderline to low average intelligence." (Tr. 329).  Dr. Deardorff abandoned an attempt to perform additional memory testing due to Plaintiff's "very poor effort."  (Tr. 328).

Dr. Deardorff did not expressly invalidate Plaintiff's IQ scores.  Instead, although a diagnosis involving cognitive impairment (whether mental retardation or borderline intellectual functioning) ordinarily appears on Axis II of the DSM IV, Dr. Deardorff's report

8

expressly states "no diagnosis" under Axis II of his report.  (Tr. 330).  As a whole, Dr. Deardorff's report, like the reports of other consultants, focuses on Plaintiff's depression and anxiety disorders, described jointly as her "emotional difficulties," as opposed to any intellectual limitations.  In terms of Plaintiff's work limitations, Dr. Deardorff opined that Plaintiff's abilities to understand, remember and follow simple instructions would be moderately impaired by her "emotional difficulties" (Tr. 330), that she would be able to understand simple instructions, but that she may have difficulty retaining them due to impaired short term memory.  (Tr. 300-331).  He further opined that Plaintiff's abilities to maintain attention, concentration, persistence and pace would be moderately impaired by her "emotional difficulties" and that her attention and concentration skills were not strong and may deteriorate over extended periods.  (Tr. 331).  Her ability to withstand work stress also is "moderately impaired by her emotional difficulties."  (*Id*.).

At the second evidentiary hearing, Mary Eileen Buban, Psy.D., testified as a medical expert.  On cross-examination by counsel concerning the validity of Plaintiff's IQ scores, Dr. Buban conceded that "the tests are valid because they were presented in a standardized format to the claimant," but explained that Dr. Deardorff "does report...that he considers emotion and/or motivational factors to have influenced the result. (Tr. 374).  Defendant argues that Dr. Deardorff's findings "make clear that he deemed Plaintiff's IQ score of 44 neither accurate nor valid," thus implicitly invalidating the scores even though Dr. Deardorff drew no such *express* conclusion.  Dr. Buban testified that she found it significant that Dr. Deardorff did not diagnose Plaintiff with mental retardation, although her testimony is more equivocal as to whether that "non-diagnosis" was based on the "validity" of Plaintiff's IQ scores. (Tr. 371).  Instead, Dr. Buban opined that, in her view, Plaintiff did

9

not exhibit the deficits in adaptive functioning that are required in order to show that a claimant meets or equals any portion of Listing 12.05.  (Tr. 374).

Plaintiff argues that the ALJ erred by disregarding Plaintiff's "valid" IQ scores, as well as by assuming that Listing 12.05B requires a formal "diagnosis" of mental retardation.  (Tr. 19).  Plaintiff is correct to the extent that the language of Listing 12.05 (which bears the heading: "Mental retardation") does not require a formal diagnosis of mental retardation, but instead requires only that a claimant present "significantly sub average general intellectual functioning..." (IQ scores) and evidence of "deficits in adaptive functioning that manifested prior to age 22."  Nevertheless, within the Sixth Circuit, courts have considered the lack of any diagnosis of mental retardation as one of several factors relevant to the determination of whether a claimant meets or equals Listing 12.05.  *See, e.g., Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 676 (6th Cir., Dec. 18, 2009)(noting that no school records, and no therapist or psychologists, had ever mentioned mental retardation or intellectual deficiencies); *cf. Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007).

There is no dispute that no one has diagnosed Plaintiff with mental retardation in this case.  Based upon case law within the Sixth Circuit and reviewing the analysis in context, it was not legal error for the ALJ to state that "[i]t is important to note and essential to the ultimate determination in this evaluation, that Dr. Deardorff did not diagnosis mental retardation despite the low IQ scores."  (Tr. 23).  In context, it is obvious that the ALJ viewed the low IQ scores to be inconsistent with other portions of the record that suggested a higher level of intellect, including Dr. Deardorff's own commentary on Plaintiff's poor motivation and effort, and other factors that he believed influenced the unusually low IQ

10

scores.

Several factors favor affirming the Commissioner's decision as within an acceptable "zone of choice" in this case, even if this Court might have reached a different conclusion. *See, e.g., Courter v. Comm'r of Soc. Sec.*, 2012 WL 1592750 *7 (6th Cir., May 7, 2012)(competing evidence of mental retardation under Listing 12.05B not sufficient to overturn decision, when substantial evidence supports contrary conclusion or the claimant's allegations of her abilities are deemed not credible). In addition to evidence suggesting that Plaintiff's single set of IQ scores did not accurately reflect her true level of intellect, the Commissioner's decision is supported by substantial evidence concerning Plaintiff's level of adaptive functioning, as well as a marked absence of evidence of any adaptive deficits that manifested prior to age 22.

Case law involving similar facts strongly supports the recommended outcome in this case. For example, in *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) as here, the claimant had remained in school only through the ninth grade but had not had IQ testing performed as a child. Unlike Plaintiff here, Foster also had been in special education classes and had tried four separate times without success to earn her GED. Foster had IQ testing first administered by two psychologists when she was over 40 years of age, both of whom reported scores in the mildly mentally retarded range. The first psychologist questioned Foster's effort but the second found her to be "very cooperative." The Sixth Circuit affirmed the denial of benefits on grounds that Foster had failed to prove that she exhibited intellectual deficits prior to the age of 22. "The only evidence in the record pertaining to this issue is that Foster left school after completing the ninth grade, but why Foster did not continue her studies is unclear." *Id.* at 355. The Sixth Circuit also noted that Foster's work

history supported the ALJ's conclusion that she did not have deficits in adaptive functioning. *Id.*

The evidence supporting the Commissioner's decision is even more compelling here. In contrast to *Foster*, Plaintiff in this case was in regular classes, and stated that she dropped out of school in the tenth grade due to pregnancy (Tr. 176).  Plaintiff had only one IQ test, and the psychologist who administered it strongly questioned her cooperation and effort, noting that the test results were inconsistent with Plaintiff's clinical presentation.  Dr. Deardorff declined to make any formal diagnosis of intellectual deficits based upon those inconsistencies, as well as his opinion that Plaintiff's cognitive abilities fell somewhere between borderline and low average intellectual functioning.  Moreover, *all* other consulting psychologists who evaluated Plaintiff's cognitive abilities diagnosed and/or described her as falling within the borderline range.

In the recent unpublished case of *Dragon v. Comm'r of Soc. Sec.*, 2012 WL 987758 (6th Cir., March 26, 2012), the Sixth Circuit reached a different conclusion than in *Foster*, but the facts in that case are distinguishable. In *Dragon*, Dr. Deardorff also administered IQ testing that, at a full-scale score of 50, suggested that the claimant was "moderately retarded."  As here, Dr. Deardorff opined that Dragon's IQ scores were "lower than would be expected...[and that] [e]motional and motivational factors may have interfered with performance ...as [she] appears to be of borderline intelligence." *Id.* at *1.  Unlike this case, in *Dragon,* Dr. Deardorff formally diagnosed "borderline intellectual functioning" rather than mental retardation.  *Id*.  The ALJ concluded that Dragon did not meet Listing 12.05 in part because her "scores...were felt to be underestimates...and therefore are not valid."  *Id*. at *3.  The presiding district judge affirmed the Commissioner's decision, but the Sixth Circuit

reversed and remanded for an immediate award of benefits under Listing 12.05.[2]  The appellate court found that Dragon had presented "significant" evidence of deficits in adaptive functioning, including similar low IQ scores at age 12 that the ALJ improperly ignored, school records concerning special education classes, a "mild articulation delay," and evidence that Dragon could not pass ninth grade proficiency tests.  The Sixth Circuit held that substantial evidence did not exist to completely invalidate the IQ scores.  Although Dr. Deardorff's report stated that Dragon's scores were "lower than would be expected," and influenced by "[e]motional and motivational factors," *id.* at \*\*6-7, the ALJ ignored "Dr. Deardorff's earlier observation that Dragon 'did not appear to exaggerate or minimize her difficulties...[and] was adequately motivated.'" *Id.*

*Dragon* is distinguishable because Plaintiff was in regular classes, no additional IQ tests exist from childhood or any other time, and no records at all reflect any deficiencies in adaptive functioning prior to age 22.  While Plaintiff reported that she may have been held back one year and that her grades were poor,[3] she also admitted she "skipped school at times because she didn't like school," (Tr. 176), and consistently testified she dropped out due to pregnancy, not for academic failure.  In sharp contrast to *Dragon*, Dr. Deardorff repeatedly and expressly noted Plaintiff's "marginal" motivation and poor effort.

A third case from this Court, *Griffey v. Astrue*, Case No. 1:08-cv-786-SSB, 2009 WL 4396520 (S.D. Ohio, Dec. 1, 2009), though unpublished, also supports affirmance of the

---

[2] Judge Boggs dissented from the portion of the opinion that determined benefits should be awarded, explaining that he would remand for further fact-finding concerning the "close and contested issue" of whether Dragon was "'of borderline intellectual functioning as opposed to mentally retarded.'" *Id.* at 12.

[3] Although Plaintiff reported to Dr. Deardorff that she had been held back, (Tr. 325), she reported to Dr. Chiappone that she "thought she was held back but she couldn't remember when."  (Tr. 230).

Commissioner's decision.  In *Griffey* as in this case, no psychologist had diagnosed claimant as mentally retarded.  The ALJ concluded that the plaintiff's IQ scores (as low as 48) were not reliable, and that the level of adaptive functioning did not indicate retardation. The examiner opined in *Griffey* that the scores were "probably ...underestimates," and - as here - had noted the plaintiff's "limited effort." In *Griffey*, Dr. Buban also testified as a medical expert that the claimant had borderline intellectual functioning based upon evidence of adaptive functioning.  After reviewing the evidence, this Court held: "Given the questionable validity of the [low] IQ tests, Griffey did not satisfy her burden of demonstrating that she met or equaled the requirements of Listing 12.05." *Id.* at *5).

### 2.  Burden of Demonstrating Deficits in Adaptive Functioning

As demonstrated by the cases discussed above, whether  a claimant meets or equals any portion of Listing 12.05 often relies upon what evidence supports -or conversely, undermines- a finding that the claimant had manifested deficits in adaptive functioning prior to the age of 22.  The requirement that a claimant show deficits in adaptive functioning is often critical, since many people with an IQ score lower than 70 remain capable of full-time work and therefore do not meet the Listing.[4]  *See Thomas v. Comm'r of Soc. Sec.*, 2010 WL 1254788 *8 (N.D. Ohio, March 24, 2010) (recognizing that "many, if not most, mildly mentally retarded individuals will be able to work,"quoting *Muntzert v. Astrue*, 502 F. Supp.2d 1148, 1157-58 (D. Kan. 2007)).  "Adaptive" functioning differs from "academic" functioning, and includes a claimant's effectiveness in areas such as social skills,

---

[4] Other circuits do not necessarily require a claimant to independently satisfy the "adaptive" diagnostic criteria in the introductory paragraph of Listing 12.05C.  *See Thomas v. Comm'r of Soc. Sec.,* 2010 WL 1254788 at *7 n.8 (N.D. Ohio March 25, 2010)(discussing differing requirements in Eighth and Ninth Circuits).

communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)(citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993) and holding that plaintiff who held a long-term, full-time job, with many activities of daily living, did not show deficiencies in adaptive functioning). "The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments...in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. at 677.

It is Plaintiff who bears the burden to show that she met Listing 12.05B by presenting substantial evidence of deficits in adaptive functioning, which deficits manifested themselves prior to age 22. However, virtually all of Plaintiff's evidence at the second hearing focused on her IQ scores alone.

At this judicial review stage, Plaintiff's burden is "much higher" to the extent that Plaintiff must show that the finding the ALJ made is not supported by substantial evidence. *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at *6 (W.D. Mich., March 26, 2012). As in *Carter*, Plaintiff's counsel presented very little evidence concerning Plaintiff's level of functioning before age 22. In fact, in *Carter*, the plaintiff presented much more evidence, by showing evidence of low IQ test scores at age 12, as well as evidence of special education classes and a high school transcript showing poor grades and problems with absenteeism. Nevertheless, the district court in *Carter* affirmed based upon contrary evidence showed that the plaintiff had "adaptive skills which had allowed her to be employed in unskilled occupations for many years." *Id*.; *accord West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)(affirming denial of listing where claimant with

15

low IQ scores had diagnosis of borderline intellectual functioning, and evidence did not show deficiencies in adaptive functioning); *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868 (6th Cir. 2003)(affirming denial of benefits under Listing 12.05 where claimant had current low IQ score, but psychologist observed she clinically appeared to function at a higher level, and lack of evidence presented by plaintiff coupled with evidence of work history and graduation from high school supported determination that claimant did not exhibit deficits in adaptive functioning prior to age 22).

The record in this case confirms that no psychologist who examined Plaintiff or who reviewed records concluded that Plaintiff had the type of adaptive deficits required to meet Listing 12.05.  Plaintiff points out that the first three state psychologists provided their opinions prior to Plaintiff being referred for a consultative IQ examination, and therefore did not have the benefit of knowing Plaintiff's IQ scores when rendering their opinions. However, the earlier consultants still had the ability to fully evaluate Plaintiff's clinical presentation and reported history, which included assessments of her adaptive functioning. Dr. Buban testified as a medical expert that the degree of adaptive restrictions are determined by the clinical interview - not an individual's IQ test.  (Tr. 374).  *See also Daniels*, 70 Fed. Appx. at 873-874 (claimant, absent IQ scores before the age of 22, did not have required deficits where three psychologists agreed that Plaintiff was of low intelligence but not mentally retarded).

Nevertheless, Plaintiff contends that substantial evidence contradicts Dr. Buban's testimony that Plaintiff did not exhibit deficits in adaptive functioning prior to age 22. Plaintiff points to her limited education, report to one examiner that she "should have" been in special education classes based upon her difficulty learning (Tr. 325), and report that she

was (or may have been) held back one year.  (Tr. 230, 325).  Plaintiff further reported that she received "poor" grades.  (Tr. 230).

No academic transcripts or school records of any kind appear in the record. Plaintiff's report that she had academic difficulties does not constitute substantial evidence of adaptive deficits manifested prior to the age of 22.  She told an examiner that she skipped classes because she did not like school (Tr. 176), and her decision to quit school was directly tied to her pregnancy, so cannot be used as evidence of deficits in adaptive functioning.  There is no evidence Plaintiff has ever attempted to earn her GED.  While Plaintiff's intellectual capabilities may have played a role in her school performance,[5] so too may many other factors.  *Compare Foster,* 279 F.3d at 355 (noting that why plaintiff left school after ninth grade was not clear); *see also Hayes,* 357 Fed. Appx. at 677 (noting poor grades also supported "the conclusion that she had poor school attendance and a troubled home life").  The fact that myriad reasons (including Plaintiff's admitted truancy) can contribute to or cause poor school performance helps explain why "adaptive functioning" often plays a large role in determining whether a claimant meets Listing 12.05.  The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes*, 357 Fed. Appx. at 676 (citing *Foster*, 279 F.3d at 355).

Similarly, Plaintiff's work somewhat sporadic work experience does not suffice to show the type of adaptive deficits required to meet Listing 12.05B.  Plaintiff has past relevant work experience as a laborer (Tr. 68).  Plaintiff has three children, and reported

---

[5] The Court assumes, for example, that it would not be unusual for an individual with borderline intellectual functioning to earn "poor" grades in regular academic classes.

17

that she was mainly a housewife who was supported by her husband's and son's disability benefits. (Tr. 177). She reported that she stopped working because of a "poor immune system." (Tr. 230). While she testified that all of her jobs were obtained through a temporary placement agency (Tr. 378), and that she had trouble completing applications (Tr. 345), she also reported that she once worked at a nursing home for two years (Tr. 177). Plaintiff has never been fired, and stated that she could maintain pace as needed (Tr. 230). Plaintiff has a driver's license.

In short, there is no evidence that Plaintiff did not work because of her mental impairment, or that she was not mentally capable of performing the jobs that she once held. *Accord Hayes*, 357 Fed. Appx. at 676. To the contrary, she testified that she had no problems understanding or following directions when she did work. (Tr. 177, 230). Although Plaintiff appears to have no friends, she has obviously sustained some relationships - she is currently married, has had children with two men, lived recently for more than a year with her niece and her niece's daughter, and has regular contact with family members. *See also Jenkins v. Comm'r of Soc. Security*, 1:06cv552-SJD, 2008 WL 339790 (S.D. Ohio Feb. 6, 2008)(plaintiff who performed own personal care, drove, walked, shopped, did household chores and cared for young child did not demonstrate deficits in adaptive functioning).

In terms of daily living skills, Plaintiff testified that she bathes and dresses herself.[6] Despite some assistance with finances and household chores from family members, the record is ambiguous as to whether Plaintiff's reliance on family members is by choice rather

---

[6] Plaintiff testified that although she dresses herself, her niece assists her by selecting her outfits because "I ain't good at dressing, and laying stuff out, and matching it up." (Tr. 351).

18

than by necessity.  To prove she meets Listing 12.05B, Plaintiff must show not only current deficits, but that she had significant deficits in adaptive functioning that manifested themselves prior to age 22.  Plaintiff failed to meet that burden of proof on the record presented.

Last, Plaintiff criticizes the ALJ's focus on Listing 12.05D, to the extent that the ALJ based her decision on the fact that neither Dr. Buban nor other psychologists found that Plaintiff had "marked" limitations.  (Tr. 18-19)  Both Listing 12.05C and Listing 12.05D require a valid IQ score of "60 through 70" plus an extra element.  As the ALJ noted, Listing 12.05D in particular requires findings that the claimant has two or more areas of "marked" restrictions in activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace, or one "marked" restriction in those areas plus repeated episodes of decompensation of extended duration.  By contrast, Listing 12.05B, with its substantially lower IQ prerequisite of "59 or less" does not require additional restrictions other than proof of subaverage intellectual functioning and adaptive deficits manifested prior to the age of 22.

While Plaintiff is correct to the extent that the ALJ did not clearly articulate the criteria for each of the Listing 12.05 subcategories, that does not mean that remand is required. Plaintiff only questions the ALJ's determination that she did not meet Listing 12.05B, and all four subcategories require Plaintiff to show early manifestation of deficits in adaptive functioning - a critical element that Plaintiff did not meet in this case.  In fact, the ALJ's determination that Plaintiff did not have "marked" restrictions in the referenced areas (pertinent to Listing 12.05D) only adds to the conclusion that Plaintiff did not have significant restrictions in adaptive functioning, whether or not manifested prior to age 22.

19

*Accord West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. at 699 (concluding that psychological evaluation that found claimant able to understand and retain simple instructions and maintain concentration and attention necessary to complete basic tasks "indicates that West did not exhibit deficiencies in adaptive functioning, and thus supports the ALJ's conclusion that West did not meet or equal Listing 12.05(C).").

Plaintiff's failure to meet her burden to show deficits in adaptive functioning is not uncommon, as a review of case law demonstrates that evidence on this issue (or the lack thereof) often results in a denial of benefits. *See generally Catterson v. Astrue*, 2011 WL 4402781 (S.D. Ohio Sept. 21, 2011)(substantial evidence supported conclusion that plaintiff did not meet Listing 12.05, where psychologists concluded that plaintiff had borderline intellectual functioning despite lower IQ scores, and Dr. Buban testified as medical expert that plaintiff did not exhibit requisite deficits in adaptive functioning prior to age 22); *Hayes*, 357 Fed. Appx. at 677 (failure to show onset before age 22 where no evidence of deficits other than poor academic performance, and claimant could care for self and spouse and take public transportation); *Carrico v. Comm'r of Soc. Sec*., 2011 WL 646843 (N.D. Ohio Jan. 21, 2011)(claimant showed no adaptive functioning limitations based on past employment history and ability to care for young child, clean, cook, drive, shop, sew, and perform household chores); *Harris v. Comm'r of Soc. Sec.*, 2010 WL 749654 (S.D. Ohio March 1, 2010)(no evidence that deficits in adaptive functioning manifested before age 22, even though 46 year old claimant in special education classes had limited ability to read, had lived with his mother for most of his life, had never worked a regular job, shopped only with his mother, and did not like to be around people, but was able to do dishes, sweep, and do laundry); *Renn v. Comm'r of Soc. Sec*., Case No. 1:09-cv-319-SSB, 2010 WL

20

3356944 (S.D. Ohio, Aug. 24, 2010)(remanding on other grounds, but affirming that Plaintiff did not meet Listing 12.05 where IQ testing revealed score within "mildly retarded" range, but substantial evidence supported determination that Plaintiff did not have required deficits in adaptive functioning).

Of course, cases can be found that differ in outcome. However, the fact that substantial evidence may exist to support a contrary conclusion does not mean that this Court must reverse. Moreover, I find cases reaching a different conclusion to be factually distinguishable. *See, e.g. Manning v. Comm'r of Soc. Sec.*, 2009 WL 243014 (S.D. Ohio, Jan. 29, 2009)(holding ALJ erred by failing to produce qualifying IQ score before age 22, where ALJ also ignored evidence that Plaintiff's work history reflected "highly supportive" environment, and other evidence of adaptive deficits); *Green v. Comm'r of Soc. Sec.*, 2009 WL 1874176 (W.D. Mich., June 25, 2009)(R&R recommending reversal where IQ results were within Listing 12.05B, and plaintiff performed poorly in special education classes before dropping out in tenth grade, did not possess a driver's license, and had other deficits of adaptive functioning).

### 3.  Remand for Further Development Not Required

While not set forth as a separate claim, Plaintiff suggests that this Court could remand on grounds that the ALJ did not fulfill her duty to fully and fairly evaluate the claim. Plaintiff argues that the ALJ should have further developed the record since Plaintiff's IQ scores fell within the range required by Listing 12.05B.

"Social Security proceedings are inquisitorial rather than adversarial," such that an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000)(citation omitted). However,

21

ordinarily an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d at 357 (citing 20 C.F.R. §404.1517).

In some cases, particularly those involving *pro se* litigants, a duty arises whereby it constitutes reversible error for an ALJ to fail to seek out additional evidence. *See, e.g., Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1052-1053 (6th Cir. 1983)(holding that an ALJ 's failure to fully develop the record denied the claimant a full and fair hearing, where it was obvious that the claimant - who had a fifth grade education and proceeded *pro se* - possessed limited intelligence).  In other cases in which the Plaintiff is represented by counsel, the Sixth Circuit has made clear that "[t]he duty to develop the record...is balanced with the fact that '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Landsaw v. Sec'y of Health & Human Servs*., 803 F2d 211, 213 (6th Cir. 1986)(citing 20 C.F.R. §§416.912, 416.913(d)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)(claimant's burden to prove disability); *Wright-Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392 (6th Cir. 2010)(claimant and her counsel bear the burden of introducing record evidence to support a finding that benefits should be awarded).

In most cases where a claimant has challenged the ALJ's failure to develop the record, counsel has specifically requested additional testing or record development during the administrative proceedings. That is not the case here.  Rather, the transcript of the second hearing makes clear that counsel believed that Plaintiff should satisfy Listing 12.05 on the basis of her exceptionally low IQ scores alone, without submitting any evidence of

22

school records and scant evidence concerning Plaintiff's adaptive functioning prior to age 22.  (Tr. 373-375).  Although the ALJ granted Plaintiff's request at the conclusion of the first hearing to order IQ testing, the ALJ concluded after review of that consultative report, and after hearing additional evidence at the second hearing including testimony from a medical expert, that there was sufficient evidence to determine that Plaintiff did not have deficits in adaptive functioning prior to age 22.  As discussed above, both sufficient and substantial evidence exists to support that finding.  Therefore, the ALJ did not abuse her discretion in failing to develop the record further at Government expense, without an additional request by counsel.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOYCE SANDLIN,                                    Case No. 1:11-cv-458

        Plaintiff,                              Beckwith, J.
                                                  Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24